Fremont-Smith, J.
The plaintiffs, Trustees of the 931 Massachusetts Avenue Condominium Trust (‘Trustees”), brought this action alleging breach of contract, negligence, and violation of G.L.c. 93A, against Suffolk Construction Company, Inc. (“Suffolk”) to recover damages resulting from Suffolk’s allegedly inadequate construction of the plaintiffs’ condominiums. The defendant has moved for summary judgment pursuant to Mass.R.Civ.P. 56 claiming that, based on the undisputed facts and applicable law, it cannot be found liable on any of the three counts raised in the plaintiffs’ complaint.
BACKGROUND
The material undisputed facts are as follows. On July 30, 1987, Suffolk contracted with 931 Associates, a Massachusetts General Partnership (“the Developer”) to construct a condominium development at 931 Massachusetts Avenue (“the Development”). The Developer engaged an architectural firm to design the building and supervise Suffolk’s construction of the Development. The architect had access to the Development and had the power to reject work and order the uncovering of completed work to inspect underneath. Suffolk provided the Developer with a one-year warranty against defective work. Suffolk substantially completed the work on January 17, 1989.
The Developer sold the condominium units to individuals, who are now represented by the Trustees. On May 3, 1990 the Trustees, through counsel, notified Suffolk of defects in the parking deck of the Development which had been “continuous since [Suffolk] finished construction.” The Trustees also notified Suffolk that the inadequate construction and Suffolk’s alleged refusal to respond to injuries and correct the problems constituted an unfair and deceptive trade practice in violation of G.L.c. 93A. Suffolk responded by asserting that it complied with all of its construction obligations under the Developer-Suffolk contract.
In addition to the alleged deck deficiencies, the Trustees allege problems with flashing between the exterior brick surface and the inner walls, improp *487 erly connected lighting in the rear of the Development, an inoperable intercom system, the lack of a utility bathroom, the incomplete construction of a storage room, an improperly pitched parking lot, an incorrectly piped hot water system (which, among other problems, caused hot water to be piped to the toilets), incorrectly pointed masonry, and the elevators, which run poorly due to Suffolk’s alleged failure to adequately protect them from debris during construction. In addition to these allegations made in the complaint, theTrustees now assert that the windows are drafty and leaky, a fire alarm panel has corroded, and a sprinkler system has burst, causing extensive water damage.
The Trustees and Suffolk communicated numerous times about various alleged defects in and around the Development. Suffolk made various attempts to repair one or more of the defects after gaining a promise from the Trustees that Suffolk’s agreement to do this work would not constitute an admission of fault. After further negotiations, Suffolk offered to correct a punchlist of problems on the condition that the Trustees would sign a general release. The Trustees rejected that proposal. On May 17, 1993, the Trustees brought this action in District Court, and Suffolk removed the case to Superior Court.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further], that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and “mandates the award of summary judgment.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
The Breach of Contract Claim
In Count I of their complaint, the plaintiffs seek damages as a third-pariy beneficiary to the Developer-Suffolk construction contract allegedly breached by Suffolk.
Under Massachusetts law a third party can enforce the terms of a contract if it was an intended beneficiary of the contract. Market Service Ins. Agency, Inc. v. Tifco, Inc., 403 Mass. 401, 405 (1988). The rule states that, “when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a thir d, the latter, who would enj oy the benefit of the act, may maintain an action for the breach of such engagement.” Rae v. Air Speed, Inc., 386 Mass. 187, 195 (1982), quoting Brewer v. Dyer, 7 Cush. 337, 340 (1851). The court in Rae adopted the Restatement (Second) of Contracts §302 which provides that, “(1) [u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.” Id. at 194, quoting Restatement (Second) of Contracts §302. “An incidental beneficiary is a beneficiary who is not an intended beneficiary.” Restatement (Second) of Contracts §302, quoted in Flattery v. Gregory, 397 Mass. 143, 148-49 (1986). Whether one is an intended beneficiary, as opposed to being merely an incidental beneficiary, depends entirely on the intent of the contracting parties. Markel Service Ins. Agency, Inc. v. Tifco, Inc., 403 Mass. at 405.
While the contract identifies the architect as having certain rights, there is absolutely no mention of future unit owners, or any indication they were intended to have any contract rights, and no other evidence is offered that there was any such specific intent. To the contrary, Suffolk’s president asserts that there was no implied contract in favor of the Trustees or individual unit owners. (See, Fish Affidavit, Paragraph 9.) While the contract does provide for the construction of a model unit to be representative of all the units, it cannot be reasonably inferred from this or any other evidence that the contracting parties intended future unit owners to have any rights under the contract.
Although the resolution of questions concerning a party’s intent are disfavored at the summary judgment stage, G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 276 n.4 (1991) (citations omitted), to avoid summary judgment, a plaintiff must demonstrate that it can produce the requisite quantum of evidence to enable it to reach the jury on this claim. National Association of Government Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), quoting Hahn v. Sargent, 523 F.2d 461, 469 (1st Cir. 1975) cert. denied, 425 U.S. 904 (1976). Viewing all of the evidence before the court in the light most favorable to plaintiff, however, I find nothing upon which a reasonable jury could conclude that this construction contract was intended to benefit the future, unknown, and unmentioned unit owners. The plaintiffs are therefore “incidental beneficiaries” who have no cause of action under the contract. See Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 70-71 (1992).
*488 The Negligence Claim
In Count III of their complaint, the Trustees allege negligent construction of the Development. The pertinent statute of limitations on such a claim is G.L.c. 260, §2B, which provides that the action “shall be commenced only within three years next after the cause of action accrues . . .” Whereas generally a cause of action accrues at the time of injury, White v. Peabody Construction Co., Inc., 386 Mass. 121, 129 (1982), where the cause of action is based on an inherently unknowable wrong, the action does not “accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant’s conduct.” Id.
The plaintiffs argue that the various defects were inherently unknowable until each one became apparent to the condominium owners. The plaintiffs would have this court establish different accrual dates for each of the complained-of defects. The defendant, conversely, argues that once the plaintiffs realized the parking deck was defective, the plaintiffs were put on notice of all construction defects.[2] Having examined the relevant case law, this court adopts a middle ground approach.
The Time Barred Claims
A number of the alleged defects were undisputa-bly known to exist more than three years prior to the filing of this action. Thus, the plaintiffs, in their complaint, allege that 1) the exterior lights were never connected properly, 2) the television intercom never worked, 3) a utility bathroom was never constructed, 4) a storage room never completed, and 5) the hot water system was flawed, including hot water having always been piped into the toilets of the condominium units. (See Paragraph 5 of the Complaint and Paragraph 4(c) of Roger Tyler’s Affidavit.) Because the plaintiffs admit that these five defects existed from the time they moved into their units and that none of these problems was latent, they cannot now be heard to argue that these defects were “inherently unknowable.” See White v. Peabody Construction Co., Inc., 386 Mass. 121, 129 (1982). Furthermore, the plaintiffs, in a letter dated May 3, 1990, complained to Suffolk about cracks in the parking deck. These six defects, then, are clearly barred by the three-year limitation period found in G.L.c. 160, §2B.
The Remaining Defects
Genuine issues of material fact remain for trial, however, as to when the plaintiffs discovered, or should reasonably have discovered, the other defects alleged in the complaint.[3] See Melrose Housing Authority v. New Hampshire Ins. Co., 402 Mass. 27, 32 (1988), and Riley v. Presnell, 409 Mass. 239, 247-48 (1991).
The 93A Claim
In Count II of their complaint, the Trustees further allege that the construction defects, their concealment, and Suffolk’s failure to respond to Trustee/owner complaints, amount to unfair and deceptive trade practices in violation of G.L.c. 93A, §§2 and 9.
“Liability under §2 is determined by analysis of the circumstances and facts of each case to determine whether the practice in question is ‘within any recognized conception of unfairness’ or is ‘immoral, unethical, oppressive or unscrupulous’ or ‘causes substantial injury to consumers ...” Glickman v. Brown, 21 Mass.App.Ct. 229, 234 (1985), quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). Negligence, however, standing alone, does not constitute a violation of §2, absent an additional element of unfairness or deception. Id. Thus, “(a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983), the boundaries of what may qualify for consideration as a c. 93A violation is a question of law.” Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 414 (1991), modified, 412 Mass. 703 (1992).
Although the plaintiffs have alleged that the defects were concealed, they have failed to present any specific evidence of such intentional concealment sufficient to raise a genuine issue of material fact in that regard. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Thus, while some defects may have been inherently unknowable, e.g. the alleged absence of flashing in between the walls, no evidence is presented that any such defects were intentionally concealed from the plaintiffs.
Finally, regarding the plaintiffs’ claim that Suffolk’s failure to respond to plaintiffs’ complaints was a c. 93A violation, it is undisputed that defendant, although disclaiming any liability, did undertake to correct one or more defects. In the circumstances, its denial of liability and refusal to agree to a more comprehensive settlement does not rise to the level of a c. 93A violation.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED, with respect to Counts I (breach of contract) and II (G.L.c. 93A) of the complaint. As to Count II, summary judgment is ALLOWED as to the following alleged construction defects: the disconnected exterior lights, the non-functioning television intercom system, the non-constructed utility bathroom, the uncompleted storage room, the flawed water system, and the cracked parking deck. Summary judgment is DENIED as to the remaining defects alleged in the plaintiffs’ complaint, i.e, the lack of flashing between the exterior and interior walls, the improperly pitched parking lot, the *489 incorrectly pointed masonry and the malfunctioning elevators.

 defendant also argues that according to principles stated in Melrose Housing Authority v. New Hampshire Ins. Co., 402 Mass. 27, 32-35 (1988), and Kingston Housing Authority v. Sandonato & Bogue, Inc., 31 Mass.App.Ct. 270, 272-73 (1991), the plaintiffs are barred from bringing this action because the Developer had the contractual right to inspect all the work and order work uncovered, thus rendering any claim of ignorance unavailing. The court rejects this argument because the plaintiffs, unlike the Developer, were not beneficiaries of the contract, and therefore had no right to oversee construction or to uncover any defects.

 These alleged defects are the following: a lack of flashing between the exterior and interior walls, an improperly pitched parking lot, incorrectly pointed masonry, and malfunctioning elevators.